All right, while counsel are getting settled, I'll call the next case. It's Burke v. Pitts, No. 24-5134. Mr. Wood. Thank you, Your Honor. May it please the Court, my name is Scott Wood, I'm from Tulsa, Oklahoma, and I am here representing the appellants in this case, Jessica Pitts, police officer from the City of Bartlesville, Oklahoma, Officer William Lewis, also with the Bartlesville Police Department and the City of Bartlesville. This case arises out of what I've said too many times from this podium, a tragic shooting when a family member calls the police for help with a family member. In this case, on June 1st of 2019, Mr. Willis Gay, the father of Thomas, who's the decedent in this case, called the Bartlesville police because he was concerned about his son. He thought he was high on something and he wanted him removed from his house. Counsel, if you don't mind, I think the panel's read the briefs and has the factual scenario. Sure. I think I'd like to jump in with a question. Okay, I appreciate that. I don't like to interrupt, but we only have 15 minutes. Sure. And I had a question about the first part of your brief, addressing the scope of our jurisdiction. Yes. And you argue the district court did not apply the objective reasonableness standard in that section of your brief. And I just need some clarification because in making that argument, are you making it in connection with the court's jurisdiction? In other words, are you saying the court legally erred in route to making a factual determination? Yes. Or, because I thought maybe you were also saying that the court legally erred in applying the Graham factors to the facts that the district court had determined. Both of those. Okay, they're both in there. Yes. All right. You didn't address the Graham factors, though, at least one by one, until pages 17 and 18 of your reply brief. So my question is whether the estate has satisfied, whether you're saying the estate has satisfied prong one when you didn't make the argument, or whether it's been waived. Yeah. Our position is they did not satisfy prong one because of their errors that they made in coming to factual determinations. Not going to argue the facts, but they misapplied some of the facts of the case, especially with regard to the second step of the Graham analysis, the immediacy or degree of threat posed in the analysis under Larson. So from that standpoint, for instance, I think one of our biggest points is that the court failed to consider the perspective of the officer, which our jurisprudence precedent in the Tenth Circuit says must be considered in a case like this. It is true that now the court alternatively refers to this as a check the well-being call, but later in the opinion says he was a nonviolent misdemeanor until the fight starts. So we would admit that prong one of the Graham analysis is in favor of the plaintiff. That's a low trespassing at your relative's house is not a serious crime. However, after this ordeal started and Officer Lewis tried to take Mr. Thomas Gay into custody or at least get him detained, I don't think Lewis testified his plan was to detain him and then figure out what's going on. But now we're heavy, heavy into facts and we're heavy into factual disputes and there are two sides to the story. You can't say the officers were supposed to look at their objective encounter or the view of the encounter. Taking all of their facts is true. That's not how the standard works. I totally understand that. OK. And so the district court went on and was pretty specific as far as the evidence that the state could rely on with there being a living witness, really, who could counter some of the things that the officers were saying. And then I think properly said, if there's this dispute on these facts and a jury could rely on the facts that the estate has, then it goes to the jury. And then the next question is, do we have any business even being involved in that under Johnson v. Jones? Well, I think if you read our brief and understand how the court misapplied two different things, the analysis of the perspective of the officer, and then secondly, the bullet trajectory, I think, is evidence that is uncontrovertible. But yet the court found that a jury could find that Mr. Gay was simply trying to leave the room. If we're talking about we have jurisdiction, which means that you've now, to get to your challenges on the merits of the Graham factors, assuming that argument isn't waived on appeal, we now accept the district court's findings and the district court's conclusions about what a jury could find. Did you agree? I agree, unless it's contradicted by the record. Let's assume that we would reject those arguments just for a moment and we proceed on the understanding with the facts as found by the district court. In footnote one of the appellee's brief, they say, if defendants did concede the most favorable view, they would be conceding that Officer Pitts shot an unarmed and non-threatening man in violation of his Fourth Amendment rights. Do you agree that that's our point of departure for engaging in the Graham analysis as an abstract legal question, which is all we have jurisdiction to do? I would agree with that and then rely on what I'll call my ace in the hole, and that is the errant qualified immunity analysis done by the court on the second prong. On the second prong? Yes. Well, before we leave the first prong, I mean, I guess I'm going to come back to this sort of two-part argument that you seem to be making, which is you want us to review some of the district court's factual determinations under the exceptions to the general rule that on interlocutory appeal, we only look at- Yeah, we're not taking issue with all of them. No, I understand, but you mentioned this trajectory, so that's one of them, right? You're saying that the autopsy report blatantly contradicts the district court's findings, but does it blatantly contradict? How does it blatantly contradict? Well, if you look at the entire record, this is a conflict took place in a small bedroom. If I'm standing at the door to the bedroom, there's a small closet with sliding doors that's just to the left. That's where Officer Pitts went. Officer Lewis entered the room, and Thomas would be somewhere in the middle, and Mr. Gay is over here on the far side of the room. Now, when I say the far side, I mean the bedroom's like 10 by 12. It's extremely small if you look at a picture in the record. So after they are in there, Officer Pitts gets knocked down, falls back into the closet, and that is when she's getting back up. When she sees something black in Mr. Thomas Gay's hands and decides it's a gun. She believes it's a gun and makes a split-second decision to shoot. And she fires one round, and he goes down on a knee briefly and then comes back up, and then she shoots again. Mr. Gay maintains, and the estate maintains, that he was only trying to leave the room. Well, if he was going to leave the room and Pitts is over here and she shoots Mr. Gay or Thomas Gay here, the trajectory is going to be leftward. That's not what the autopsy says. The autopsy says the bullet trajectories were straight ahead. Now, one of them was downward, which would have meant that Thomas Gay was leaned over as he was coming towards Officer Pitts. Okay. I mean, I don't want to have you take too much of your time on this, but just one last thing on that. Was there any diagram in the autopsy report? There was. They show the placement of the bullet entry wounds on a body diagram, and then the trajectory of the wound is described. And that's in the record? It is. Okay. Yeah. So are we done with that? I think we're done with that. Okay. Going on to ‑‑ What else do you have on blatantly contradicted? Anything else? Well, small things like the court finding that this was a call, check the well‑being call, what was clearly something else. He wanted his son removed from his house. When you're someplace and the owner didn't want you there, that's trespassing. So the other thing that comes to mind is when they were ‑‑ the court describes the rapidity with which this entire event occurred. I think at one point they say it's 200 seconds or something like that. And say that the officers rushed into the house and confronted Thomas Gay. And that's just simply not true. It's not borne out by the record. Mr. Gay had the key, since Thomas had locked all the doors to the house. He had a key to get them in. He let ‑‑ they don't know where to go. He led them into the garage, up some steps, into a kitchen, and into the living room where they encounter Thomas Gay. He's on the far side of the room. And in his interview with the OSBI, Willis Gay says the officers started trying to talk to him. Now, every witness in that room saw Thomas Gay holding something, but it was something other. Everyone had a different take on what it was. Lewis thought it was some kind of bow with regalia on it. Mr. Willis Gay testified that it was a ventriloquist dummy. And Jessica Pitts said it was something else. But anyway, he was ordered to drop whatever it was. And then the rapidity or the rapidly evolving part of this begins. So the court's characteristic of them rushing into the house and confronting Thomas Gay and yelling at him is just completely not true and not supported by the record. And that becomes important when we go to the qualified immunity analysis. Counsel, may I ask you about sort of the bookend to Judge Phillips' question? So you have two ways to establish appellate jurisdiction, which is very limited in interlocutory appeals. You were talking about facts that are blatantly contradicted. I had a challenging time discerning from your brief what you were contending was the legal error en route to the factual determination. Not considering Officer Pitts' perspective. And is that it? Yes. That's it. I only have a short time, so I'll wrap this up quickly. None of the cases that were cited either by the court or by plaintiff with regard to preexisting established law fit the facts of this case. None of them do. Why wouldn't Garner be sufficient here to provide the clearly established law, Garner itself? I'm sorry? Why wouldn't Garner itself, our main cases on this, if we take the facts as the district court found them, an officer can't use deadly force against a suspect absent probable cause to believe the suspect poses a threat of harm. So if we take the facts as found by the district court, I mean, that is black letter, well-established law, even in a clearly established context where we need a case on all fours, that seems to fit, doesn't it? Our courts have repeatedly stated that general statements of the law are not inherently incapable of giving fair and clear warning, but must be applied in light of the specific context. And none of the cases cited by the court or the plaintiffs, Finch, Zuckel, Zia Trust, Walker, King v. Hill, Huff, are even remotely similar to the facts of this case. Do you agree that if the facts were such as the estate presents them, that there would be a claim? There could be. But if you take the facts as they are right now by the judge and use those, they still don't meet the pre-existing law standard required. Let me just ask you on prong two. Are you making the argument about analogous cases being, or the cases that have been cited, you're saying, well, they're too remote. In distinguishing those cases, are you using the facts that the district court determined that a reasonable jury could find, or are you using the facts that you're arguing the district court should have found? No. As it stands, if you take the district court facts and use those for the qualified immunity analysis, they still don't reach the threshold of specificity that's required under that exacting standard. Why wouldn't Tenorio work, which says you have to be charging, the person has to be charging the officer, and enter the estate's facts? Right. Tenorio, nothing was going on. The man simply entered the room and started. With a knife. Right, held down by his side, walking towards them. Not charging. And I think, to me, a former police officer, I wouldn't like that scenario. If people know that's how you can hurt a police officer, everyone would use it. Hold your gun down by your side, put your knife for your baseball bat. And yet, the majority said what the majority said. Right. That we don't have that kind of conflict in this case. Well, there was more of a threat. My point is there's more of a threat in Tenorio than there was here using the estate's facts. And it wasn't good enough in Tenorio. You know, Judge, I can't agree with you on that. Simply because of the way things happened in the bedroom. You liken that to walking to them within two or three strides with a knife. After being told to drop the knife several times with guns extended. Well, it became clear as soon as Officer Lewis tried to tase Mr. Gay, that he was not going to submit to being taken into custody or detained. They go in there to do that. And there is one hell of a struggle. Now, the estate downplays that. You know, the dad said in his interview, although the officers didn't hear it during the melee, that Mr. Gay, Thomas Gay, yelled out, I'm going to kill you. And that he'd never seen his son in such a rage. That wasn't present in Tenorio. Well, the officers said they didn't hear anything like that. Which is common in a critical incident. That's what matters, right? The officers heard it. It corroborates their statements about how intense the struggle was. I had one more question. We have two officers here, we have Officer Lewis who used the taser and Officer Pitts who used lethal force ultimately. Is there anything that we should be thinking about, specifically with respect to prong two, specifically as to each officer? In other words, you're making sort of a collective argument about the officers, but is there anything about the clearly established law that we should be thinking about specifically as to each officer's actions here? Yeah. You know, as to Lewis, the court found that he did give a command in the living room before he used his taser. He had his taser out after Mr. Thomas Gay refused to drop what was in his hand. And the cases cited by the court or by the estate that are tasing cases, a couple of them had no warning at all before the taser was used and were very different scenarios, not in a confined space or house like this one was. Thank you, counsel. Thank you. May it please the court, my name is Jack Warren, and I represent the estate of Thomas Gay in this case. And I appear here to urge the court to affirm the district court's what we believe to be thorough, well-reasoned, I believe it was a 59-page opinion. So you think we have appellate jurisdiction? Well, that's where I would like to start as well. I do not believe that, well, to the extent, it's unclear in their brief what their, to me, what they're willing to concede factually and what they're not willing to concede factually. The majority of their brief, in my opinion, is challenging the district court's findings of fact. And in doing that, I don't think that the court has any jurisdiction to do that. Well, we don't have jurisdiction unless they are able to satisfy the two exceptions to that. So what is your position on that? Yes. So the two exceptions that they've cited, I'd start first with the blatant contradiction. I mean, first, I think the court's clear that that's a very high standard. It has to be essentially a visible fiction that's not supported anywhere in the record. And my reading of their brief is that they take a position that the court, Thomas' path in the bedroom is blatantly contradicted. And to me, it's unclear why that would be blatantly contradicted, because the testimony is clear that Willis Gay, Thomas' father, who's standing at the door of the bedroom, consistently said that Thomas was trying to run towards him. Whereas Officer Pitt says that he was trying to run towards her, who was in the left side of the bedroom, if you're standing from the doorway. And the district court, considering both facts, found it as disputed, and considering that in the plainest favor, said that a jury could certainly find that he was trying to get to the door to get out of the bedroom. I don't think that there's anything to suggest that it's blatantly contradicted or not supported in the record. In regards to the kind of moral... Well, okay, but they're relying on this autopsy report, which you haven't addressed. So why don't you say something about that? Sure. So I think they're overstating the autopsy report. First of all, I think that if we're going to get into bullet trajectory and angles and whatnot, that really requires an expert to testify to that, which they don't have an expert. They're just reading an autopsy report that describes the bullet wound itself and a picture of the bullet wound. There is a bullet wound on Thomas' right leg, but there is, you know, you'd ask about a diagram. There's a picture of his leg, but there's not a diagram showing where the bullet entered or how the bullet entered. That's what I was getting at. Yes, there's not a diagram showing the path or angle of the bullet. And the fact of the matter is, whether Thomas was running to the door or running at Pitts, Pitts would have been on his right side and been able to shoot his right leg. That is not a blatantly contradiction. That's not a visible fiction, that one, you know, circumstantial fact. Now, again, that's a fact that a jury may disagree with, but that's for a jury to decide. And the court found that there was evidence to support an alternative conclusion. Anything else on blatant contradiction? No, Your Honor. Just generally that I think the court recently in Ellis v. Salt Lake had said that the blatant contradiction generally applies to evidence like videos. And obviously there is no video here. I don't think that the evidence that the defendants are relying on is the kind of evidence that the court generally uses or relies on when considering blatant contradiction. In regards to the considering the facts from an objective officer, meaning Officer Pitts, really the way I see, the way the defense have argued this is essentially that the only person's perspective that matters or opinions about the case that matters is the officer that is involved in the shooting. But while I agree that, of course, the counsel, let me just, is that, but are they, my understanding from Mr. Wood a few minutes ago is that they're not necessarily making a factual argument in terms of objectives. They're making an argument that the district court erred by applying, by failing to apply the correct standard, which is objective reasonableness. So doesn't that, if it's just a legal argument, doesn't that remain in our appellate jurisdiction? Well, I don't know that I, that's the reading I took of their argument, at least in the briefing. In the first part of their brief where they're addressing the facts of the case and taking issue with it, they continuously referenced that the district court made a error in applying, a legal error in concluding on their facts. Well, I understand exactly what you're talking about. That's why I asked the question right out of the shoot, which is what are they really arguing in that part of their brief? And he said they're arguing both, that they're arguing these exceptions in terms of looking at district court facts, blatant contradiction, error in route two, but also arguing apply the wrong legal standard. Now, you may disagree with that second argument, but that doesn't sound like a fact argument. It sounds like a legal argument that we would have jurisdiction to review. So what do you say about that? I would agree with that if the defendants had argued that. The objective standard comes from the Graham case, obviously. As you referenced earlier, there's no discussion of Graham in their brief. They're not. Well, that's another problem. But I'm just trying to, I think the line of questioning you've been getting so far is just to determine are we in business jurisdictionally at this point? Are we in business on prong one? Sure, and again, I don't think we're in business on prong one jurisdictionally.  No, at all, because in arguing that they didn't consider the perspective of Officer Pitts, that's reliant on Officer Pitts' perspective that Thomas Gay was armed or presented some kind of black object and that he was approaching her. That is to their argument that the court erred by not considering her opinion, objectively or not, hinges on those two findings. Well, I actually expected you to say something a little different, which is that why wouldn't you be arguing that the district court did consider her perspective along with the rest of the evidence? Well, I want to say I do think the district court did. Now, I'm talking jurisdictionally. Well, so am I. But they're arguing that the court legally erred because they didn't consider her perspective at all. And my question to you is, well, is that right? I mean, did the district court consider the officer's perspective? I mean, why wouldn't the district court consider the officer's perspective? Yes, so moving to whether the district court actually did consider it, taking aside the jurisdictional issue, yes, of course, I think the district court addressed the objective perspective. So you're saying the district court did not legally err? The district court did not legally err in applying the grand factors objectively. Yes, that is absolutely our position. I don't want to argue the case for you, but I just want to make sure I understand what it is. And just to clarify, in either way, didn't err en route to making an incorrect factual determination? In other words, the argument concerning the failure to consider the perspective of the officer didn't compel the court to make a factual misstep, correct? That's your argument. That is my argument. My argument is that to consider the evidence from an objective officer, you have to consider all of the facts of the incident. Now, that could include facts that are not from the officer and are from other people. Let me ask you about some facts that I don't think are in dispute and how they factor in. Isn't it undisputed that Mr. Gay pushed Officer Lewis? It is, yes, it is undisputed that after the fourth taser deployment in the bedroom, immediately prior to Pitt's shooting, that Officer Lewis had attempted to tase him manually and Thomas had pushed and attempted to run. All right. And also, isn't it undisputed that Mr. Gay was, there's this reference that he was in a quote-unquote rage? All right. So it is, I think there's some nuance there, okay? The defendants are attempting to act like Thomas was in a rage throughout the entire incident. But when the officers initially encounter Thomas, he's non-verbal. He's standing there not doing anything. When the rage starts or when Willis, the father, talks about that is by the time he's in the back bedroom and has been tased four times. At that point, there is certainly at least an argument that he was in some sort of rage or anger, sure. But again, that kind of goes back to the creating the force issue or the creating the need to use the force. If you build those facts, though, into the Graham analysis, understanding nuance, but if you've got pushing and rage, why wouldn't it be reasonable for the officers to view Mr. Gay as threatening or maybe even resisting or evading arrest? Well, I mean, so I guess what I would say is even considering giving them the biggest benefit of the doubt that Thomas was in some kind of rage. I mean, first of all, it did happen so quickly, it's hard to even, you know, point. That's a difficult thing to even grasp. But even if he was in some kind of rage and attempting to run, the question is, is what was the threat? Was it some kind of mortal threat? There was no allegation that the officers arrived at the scene that Thomas had done anything threatening. While Willis called and asked him to be removed and said he might be high on drugs, there was no claim that he had threatened anyone, that he had a weapon. In fact, he had told him specifically he didn't have a weapon. There was no claim that Thomas was verbally threatening anyone. So let's just say that him being upset and attempting to go towards the door posed some kind of threat. It certainly wasn't a mortal or serious danger to anything or anyone. What about the, on the first, Larson fact, arrest? Relative to Officer Lewis, this really goes back to Judge Rossman's question about separating the officers out. One tased, one shot. Didn't the officers tell Mr. Gay to drop what he was holding and then he didn't comply? Why wouldn't that justify the tasing? So, Officer, the facts as determined by the court was that Officer Lewis entered the living room, which was led by Willis. And that upon seeing Thomas, he said, hey, can you drop that? Thomas didn't do that. And according to Officer Pitts' testimony, seconds later it was taser deployed. While he did tell him to do something, sure, and I'm not necessarily going to argue that Thomas fully complied. Now, there is also testimony in the record from Willis Gay that he had actually removed the item before this even happened. But the fact of the matter is, even if simply, let's just say that he, Lewis had said, drop what you're holding. Seconds go by, Thomas doesn't do it and he tases him. The facts of the court were that Thomas would at that point have been holding a ventriloquist doll or some kind of toy doll. While that may have been some level of resistance, it's hard to understand why a taser would have been the appropriate response. It would have been an excessive response to some kind of passive resistance, not to drop something that wasn't even a weapon. So while I agree that technically he did... Aren't we kind of back, though, to officer perspective? They come into a tense situation, they think he's holding something, they're not sure what it is. It could be innocuous, it could be dangerous, but we'll drop it. But I guess I would push back at why is it a tense situation? They've been told that Thomas won't leave. They haven't been told that he's threatening or that he's dangerous. They've been told he's unarmed. He was a tall, big guy, sweating profusely. There were indicia, weren't there, for an officer to think that something is about to happen? Well, I mean, I guess you could say that in any encounter, I would say. If I encounter someone and they're larger than the officer... Well, I'm not just saying that. I'm saying in part of the totality, wouldn't those factors influence a reasonable officer's behavior? So I would say that, yes, they certainly could. But one of the key facts here is how quickly he tased him, right? Because this is a nonviolent, nonthreatening, not exigent circumstance, to immediately resort to tasing, right? It would be one thing, I would definitely agree, if they had discussed with him multiple times, if they had asked him, if they said, hey, I'm... They hadn't even told him he was detained in custody. How do our cases that credit split the need for split-second decision-making factors? Well, I... So, you know, it's funny. I expected to address this because obviously the cases with the split-second generally are saying, well, the officers have leeway, it's a split-second decision, all these things. But part of our whole theory is that the speed at which this incident occurred was because of the officers. Thomas, there was not a... You know, in the cases that the court cited as clearly established, that the parties have tried to... Or that the defendants have tried to distinguish, the thing about those cases, which even supports our case even more, is they were all arriving at what was a tense or threatening or dangerous situation. Here, it was not tense or dangerous or threatening. They walked in and within seconds tased him, ran at him and forced him, cornered him in this back bedroom, right? And so, like, I do agree that generally a tense, quick situation would favor the officers. In this situation, it doesn't, particularly because Lewis was not in a tense situation when he tased Thomas. It was not a threatening, time, quick, exigent situation. Thomas was standing there doing nothing. He hadn't walked to the officers, he hadn't threatened the officers, he hadn't done anything besides simply stand there. So, I see my time's up. I don't know if there are any further... Well, could I just ask you on prong two, qualified immunity, what is your best published case for clearly established law on the taser and on the shooting? Well, on, I think there are, on the tasing, I guess I would just say that it's kind of some combination of the Kavanaugh and Lee case. And not specifically, you know, they talked about the warning. I'm not, I think the warning is relevant because they didn't warn him that he was going to tase him. But I think it's clear that a non-threatening misdemeanor using a taser that quickly is a violation of the Fourth Amendment. On the shooting, I mean, Judge Rossman, I think, said it well as, you know, from a bigger picture, assuming Thomas was unarmed and non-threatening. I think it's clear in Tennessee v. Gardner. I think it's clear in Carver's Castle that shooting a non-armed misdemeanor that poses no threat is a violation of the Fourth Amendment. I didn't hear that last. Carver's Castle, which cites Tennessee v. Gardner. Is that one in your brief? It is not in my brief. I'm just referencing that now. But the, as far as what is referenced there, I mean, I think it's But that case is applying Gardner, right? Yes, yes. I think it's probably Sabalos there. Well, I was just asking what you thought your strongest cases were. You do agree at this point, though, that the unpublished cases aren't going to get you there. So I don't necessarily agree with that. I agree that the unpublished cases cannot serve solely as clearly established law. I do think, though, based on the course precedent, that unpublished cases can support a finding of what the state of the law is. And so I do think that the unpublished cases, if there were just unpublished cases, yes, I would agree. But I think the unpublished cases go to support the general state and condition of the law as it stands here in the district. Why aren't you relying on Tenorio and Baca? Well, so to be honest with you, I've been thinking about that when, at the trial court level, we didn't as much because of the officers' dispute about where, what happened in the bedroom, right? It was more about the escalation at that point than shooting an unarmed, nonthreatening misdemeanor. Because I do believe that, particularly Baca and Tenorio, I think they both very much apply here. I mean, I think that issue is, I don't want to be, is so clearly established that under the state of the law, if Thomas was just simply running out of the bedroom with nothing in his hand, that that would be a, and like you said, and Tenorio hadn't moved on to the officers and was unarmed, unlike most of the other cases, that it provides further support than even those cases had. Thank you, counsel. Thank you. You both went over a bit, so I think we need to conclude this argument and move on to the next one. The case will be submitted and counsel are excused.